**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Daniel Delfin Garces,

Petitioner,

v.

Eric Rokosky,

Respondent.

No. CV-26-03632-PHX-DWL (DMF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE:**

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 3 at 3).[1]

## I. BACKGROUND, PROCEDURAL POSTURE, AND HABEAS CLAIMS

On May 22, 2026, self-represented Petitioner Daniel Delfin Garces ("Petitioner" and/or "Garces") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his immigration detention ("Petition") (Doc. 1). In the Order screening the Petition, the Court recounted:

> As alleged, Petitioner, a native of Cuba, entered the United States on June 4, 2024, and, after a short period of detention, was released on parole pending

[1] Citation to the record as "Doc." indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-26-03632-PHX-DWL (DMF).

> his immigration proceedings. (Doc. 1 at 11, 12.) Petitioner filed an application for adjustment of status, which an immigration judge (IJ) denied, based on a lack of jurisdiction. (*Id.* at 4.) On June 4, 2024, Petitioner received a Notice to Appear charging him as an arriving alien. (*Id.* at 12.) On February 12, 2026, Petitioner was re-detained by Customs and Border Protection officials. (*Id.* at 8.) On May 5, 2026, an IJ denied Petitioner bond or release based on lack of jurisdiction. (*Id.* at 1.) Petitioner states he has not received an adequate review of his custody and has "attended seven court hearings without final judgment or a definite resolution to [his] case." (*Id.* at 4.) He claims he poses no danger to the community and is not a flight risk. (*Id.*)
>
> Petitioner asserts his prolonged detention without a bond hearing violates his due process rights under the Fifth Amendment. He seeks release from custody or a bond hearing.

(Doc. 3 at 1-2). The Court ordered Respondent to answer the Petition, requiring that:

> Respondent must respond to the Petition. In his Response, Respondent must articulate whether Petitioner's release on parole created a cognizable liberty interest in his release from custody; the basis for Petitioner's re-detention and whether he was provided a pre-deprivation hearing; and the status of Petitioner's immigration proceedings. Any response must be supported by documentary evidence including, if applicable, affidavits signed under penalty of perjury by individuals with personal knowledge of the factual statements made therein.

(Doc. 3 at 2).

On June 23, 2026, Respondent filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 9), opposing Petitioner's requested relief. Respondent's Answer is supported by documentary evidence relating to Petitioner's immigration proceedings and parole (Docs. 9-1, 9-2, 9-3, 9-4, 9-5, 9-6). On July 16, 2026, Petitioner timely filed a reply ("Reply") (Doc. 12).

The parties agree that Petitioner is a native and citizen of Cuba who presented himself at the Paso Del Norte Port of Entry in El Paso, Texas on June 4, 2024 (Doc. 9 at 1; Doc. 12 at 2). Immigration officers charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) due to his lack of valid travel documentation (Doc. 1 at 12-15). After a brief detention, Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)

(Doc. 1 at 4; Doc. 9 at 1). Petitioner's most recent I-94 reflects that his parole was set to expire on April 24, 2026 (Doc. 9-5). Petitioner resided in the United States for approximately 18 months and is the father of a one-year-old United States citizen daughter (Doc. 1 at 20). Petitioner remained at liberty until January 10, 2026, when United States Customs and Border Protection ("CBP") officers found Petitioner with three other individuals who were in the process of being smuggled into the United States (Doc. 9-2 at 1-2). CBP officers arrested Petitioner, alleging violations of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1325 (Doc. 9-2 at 1; Doc. 9-3 at 1). On January 27, 2026, Petitioner pled guilty to Accessory After the Fact to Enter the United States at an Improper Time or Place, a misdemeanor offense, in violation of 8 U.S.C. § 1325(a)(1) (Doc. 9-4 at 1-4). Petitioner was sentenced to 30 days' imprisonment (*Id.* at 2). In his Reply, Petitioner acknowledges that Respondent accurately recounts the facts of his conviction and sentence (Doc. 12 at 3).

On February 7, 2026, after completing his sentence, Petitioner was transferred to immigration detention (Doc. 9 at 2; Doc. 12 at 3). On June 17, 2026, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba or alternatively to Mexico (Doc. 9-6). Petitioner avers that he timely appealed the IJ's removal order (Doc. 12 at 3). Based upon the publicly available ICE Online Detainee Locator System, Petitioner remains in custody at the Eloy Detention Center.[2]

## II. DISCUSSION

### A. Jurisdiction

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Generally, "challenges to the statutory framework that permits the alien's detention without bail," *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018), "questions of law" raised in the application or interpretation of detention statutes, *Leonardo*

[2] *See* https://locator.ice.gov/odls/#/search (last accessed Aug. 4, 2026).

*v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), and "[c]laims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). Thus, the Court has jurisdiction over the Petition.

**B. Petitioner is Entitled to a Bond Hearing**

*1. Petitioner's Detention is Governed by § 1225(b)*

Four statutes grant the Government authority to detain certain aliens during removal proceedings: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). An alien's place "within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008)).

As relevant here, "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival) . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a). Under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1225(b)(1), an alien who applies for admission without valid entry documentation is inadmissible and "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). "[D]etention under both § 1225(b)(1) and (2) is mandatory and affords no opportunity for release on bond." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *7 (9th Cir. July 30, 2026). However, the government may release an alien on temporary parole, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A))

Here, Petitioner presented himself at a port of entry, immigration officials charged Petitioner as inadmissible, and Petitioner was placed into removal proceedings. Accordingly, Petitioner's initial detention was authorized by § 1225(b). Section 1225(b)

also applies to Petitioner's re-detention. *See* 8 U.S.C. § 1182(d)(5) (providing that the alien shall be "return or be returned to the custody from which he was paroled" once the parole is terminated).

2. *Petitioner's Liberty Interest*

Following Petitioner's initial detention, Petitioner was granted humanitarian parole under § 1182(d)(5) and remained at liberty for approximately 18 months. Following his criminal conviction and sentence, Petitioner was taken into immigration detention on February 7, 2026. Respondents acknowledge that Petitioner was re-detained before his parole expired on April 24, 2026 (Doc. 9 at 2). The parties contest whether Petitioner was entitled to due process regarding his re-detention.

Section 1182(d)(5) provides that the government may temporarily parole an alien into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" Such parole is not regarded as an admission of the alien and when the purposes of the parole have been served the alien will "be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5).

While the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty will be revoked only if the individual fails to live up to the conditions of release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In the context of immigration detention, agency precedent "recognizes that a prior release should not be revoked absent materially changed circumstances." *Singh v. Janecka*, No. 5:26-CV-01466-AYP, 2026 WL 1334832, at *2 (C.D. Cal. May 8, 2026) (first citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); and then citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194-98 (N.D. Cal. 2017)).

Applying *Morrisey*, this Court has joined the host of other district courts[3] in concluding that when "ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Osmonaliev v. Cantu*, No. CV-25-03531-PHX-JJT, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *see also Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). This Court has also explained that "recent caselaw confirms that an immigration detainee released on parole retains a liberty interest in his release and that 'liberty interest [does] not expire along with his parole.'" *Urinboev, v. Rivas*, No. CV-26-00488-PHX-AMM (MTM), 2026 WL 1450042, at *2 (D. Ariz. May 22, 2026) (quoting *Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *4 (D. Ariz. Mar. 9, 2026)).

However, Respondents insist that Petitioner has no liberty interest in his humanitarian parole and argue that *Kwai Fun Wong v. Immigr. & Naturalization Serv.*, 373 F.3d 952, 968 (9th Cir. 2004), forecloses such a claim (Doc. 9 at 3-4, 7). Respondents correctly point out that the Ninth Circuit in *Wong* dismissed the petitioner's due process claim because "[t]he INA does not create any liberty interest in temporary parole that is protected by the Fifth Amendment." 373 F.3d at 968. However, Petitioner here does not assert a liberty interest in the temporary parole itself. Petitioner instead argues that he has an interest in freedom from detention because of his residence in the United States, which includes the birth of a United States citizen daughter (Doc. 1 at 4, 20; Doc. 12 at 7, 10). Moreover, Petitioner does not ask the Court to reinstate his parole but argues that a neutral decision maker should determine whether his continued detention remains necessary in light of his conviction (Doc. 12 at 7, 12). Thus, *Wong* is inapplicable here.

In sum, Undersigned concludes—consistent with *Morrissey* and the above cases from district courts in this circuit—that Petitioner has a protected liberty interest in freedom

---

[3] *See, e.g.*, *Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025); *Noori v. Larose*, No. 25-cv-1328-GPC-MSB, 2025 WL 2800149, *9-10 (S.D. Cal. Oct. 1, 2025); *Ramirez Tesara v. Wamsley*, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sep. 12, 2025).

from immigration detention.

*3. The Mathews Factors Favor a Bond Hearing*

Having determined that Petitioner has a protected liberty interest in freedom from immigration detention, undersigned now turns to whether the procedures afforded to Petitioner were constitutionally sufficient. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The sufficiency of the procedures is assessed by weighing the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. *Mathews*, 424 U.S. at 335.

First, Petitioner has a strong interest in his freedom from detention. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Prior to Petitioner's criminal conviction and immigration detention, Petitioner resided in the United States for 18 months and now has a United States citizen daughter. Accordingly, the first factor favors Petitioner.

As to the second *Mathews* factor, Petitioner argues that the risk of erroneous deprivation is high because he has received no procedural protection (Doc. 12 at 11). Undersigned agrees. As the Ninth Circuit has stated, "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022). However, in ordering immediate release and a pre-deprivation hearing, this Court has discussed whether the petitioner complied with release conditions and lacked a criminal history. *Osmonaliev*, 2025 WL 3637397, at *1 (noting that the respondents did not allege "criminal acts, or flight risk, or failure to comply with immigration orders"); *Rosado*, 2025 WL 2337099, at *15 (same). In light of Petitioner's misdemeanor conviction and resulting 30-day sentence, changed circumstances may justify revocation of Petitioner's prior release. Thus, the risk of

erroneous deprivation of liberty is reduced. The second factor moderately favors Petitioner.

Regarding the third *Mathews* factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). Moreover, detention during removal proceedings can serve the government's legitimate interest in preventing an alien's flight. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008). Yet the administrative burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). In short, the government has compelling reasons to continue Petitioner's detention considering Petitioner's criminal conviction. The third factor favors Respondents.

In sum, two of the three *Mathews* factors favor Petitioner and undersigned thus concludes that Petitioner's re-detention without any procedural protection violated his right to due process. Considering Petitioner's criminal conviction and the government's legitimate interests, undersigned concludes that the appropriate relief in this matter is a bond hearing. *See Marquez v. Mullin*, No. 5:26-CV-02156-PD, 2026 WL 1836005, at *5 (C.D. Cal. June 22, 2026) (ordering bond hearing for immigration parolee detained following a misdemeanor conviction).

## III. CONCLUSION

For the reasons set forth above, Petitioner's re-detention without any procedural protection violated his right to due process. It is therefore recommended that the Petition be granted to the extent that Respondents must provide Petitioner a bond hearing.

Accordingly,

**IT IS RECOMMENDED** that the Petition (Doc. 1) be granted to the extent that

Petitioner be provided a bond redetermination hearing.

**IT IS FURTHER RECOMMENDED** that Respondents be ordered to provide Petitioner a bond redetermination hearing **within twenty-one (21) days** of the entry of judgment; absent a timely bond redetermination hearing, Respondents should be ordered to release Petitioner from ICE custody under the same conditions that existed before Petitioner's present immigration detention.

**IT IS FURTHER RECOMMENDED** that Respondents be ordered to file a notice of compliance **within three (3) days** of providing Petitioner a bond redetermination hearing or releasing Petitioner.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72. In addition, LRCiv 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated this 5th day of August, 2026.

Deborah M. Fine

Honorable Deborah M. Fine
United States Magistrate Judge